## Omlor v. Chester School District

*Arthur Levy*, for plaintiffs.

*Jacob Sapovits* and *Guy G. deFuria*, for defendants.

SWENEY, P. J., October 8, 1965.—Plaintiffs have filed a complaint in equity seeking to enjoin defendants from transferring them from the schools where they have taught for 19 years and five years, respectively, and alleging that the transfers were made arbitrarily, unjustly, improperly, without authority, in bad faith,

in a discriminatory manner and to the detriment of the public good and welfare, in violation of plaintiffs' rights of due process and in contravention of prior established practices relating to the reassignment or transfer of teachers within the School District of the City of Chester.

This matter is now before the court en banc for the determination of defendants' preliminary objections in the form of a demurrer, averring that the complaint does not set forth any grounds which entitle plaintiffs to relief.

All parties hereto agree that the Public School Code of March 10, 1949, P. L. 30, as amended, makes no provision as to the reassignment or transfer of a teacher from one school building to another. In the absence of any provision restraining the superintendent from making a transfer, it is his prerogative and duty, where he finds it to the best interests of the school district, to transfer teachers, and, in so doing, a superintendent has discretionary authority and power which will not be reversed by any court, unless there is evidenced a clear abuse of discretion and the burden of showing such a clear abuse of discretion is a heavy one: Regan v. Stoddard, 361 Pa. 469 (1949) ; Hibbs v. Arensberg, 276 Pa. 24 (1923). A professional employe, under the tenure provisions of the Public School Code, does not acquire a vested right to teach in any certain class or in any certain school; the only limitation on a school board's general power is that the work to which a professional employe is assigned be of a rank or class equivalent to that by which his permanent status was acquired, and one for which he is qualified: Smith v. Darby School District, 388 Pa. 301, 306 (1957).

"In order for a court of equity to grant relief, it must clearly be shown that the school board acted outside the scope of its statutory authority or not in good faith. 'It is only where the board transcends the limits of its

legal discretion that it is amenable to the injunctive processes of a court in equity' ": Landerman v. Churchill Area School District, 414 Pa. 530 (1964).

It would be presumptuous for a court to attempt to impose its control upon the exercise of discretion by trained educators. A board of school directors is vested with wide powers; the superintendent, acting as the board's agent, will not be interfered with unless it is apparent that it is not discretion that has been exercised, but arbitrary will or caprice: Regan v. Stoddard, supra. See also Ganaposki's Case, 332 Pa. 550 (1938).

Plaintiffs contend strongly that the superintendent of schools, backed by the school board, acted arbitrarily and capriciously. The complaint and the testimony taken before the chancellor on the question of a preliminary injunction discloses that Walter R. Omlor had taught for 19 consecutive years at Smedley Junior High School, where he was certified to teach vocational woodworking and general shop, consisting of electricity and metal work. Mrs. Omlor is permanently certified to teach, and has been teaching, for the past five years, English, mathematics and social studies at the same school. The Omlors are husband and wife, and admittedly are excellent teachers.

It is admitted by all parties that there was a "breakdown of morale at Smedley"; there were conflicts, dissensions and clashes of personalities within the faculty of the school. Omlor, as head of a teachers' association in the school, brought complaints to the principal, who seemingly did nothing to correct matters; subsequently, Omlor conferred with the school superintendent. A short time after this meeting, the Omlors received written notices of their transfers to other junior high schools in the school system, to take effect September 1, 1965. The Omlors demanded and received an audience before the school board, where, very evidently, there appeared evidence of rancor and dislike. The school

board supported the superintendent's action, and this complaint in equity followed.

As to the complaints lodged by Omlor against two members of the teaching staff charging the use of improper language by one teacher and favoritism in assignments of special trips to both teachers, the superintendent testified that he did not make any investigation to discover whether or not the charges were true; that he did not feel that Omlor had initiated the charges; that the two so-called offender teachers were part of the school's tradition; that there was real feeling between the children, and that he transferred the Omlors for the good of the school morale. He said that the transfer could be termed "disciplinary".

So we have a narrow question for determination. Granted that a school superintendent has the right to transfer teachers within the school district, may he transfer teachers as a disciplinary measure without investigating the causes which make the action necessary, and without notice to and consultation with the teacher involved?

Our answer to this question must be that the school superintendent is responsible for the morale of teachers and students; he has the inalienable right to use his judgment and, when backed by board action, his actions in the transfer of teachers, with or without cause, may not be assailed. And this is true, although a court may have question as to whether or not the same action would have been taken by the court, if in the position of a school superintendent.

We must face the problems of this changing world. Desegregation in our school systems is on everyone's tongue. Part of this problem will be the transfer of white teachers to predominately Negro schools, and vice versa. If the courts are to step in and impose their judgments upon the actions of a school superintendent, an already serious situation grows more serious.

And, finally, it has been argued here that the legislature has laid down procedures under the tenure provisions of the Public School Code of 1949, as amended, and in other aspects of school control, but that the legislature had not seen fit to do the same in cases of teachers' transfers. This is significant. It would be easy for the legislature to declare that all teachers and teacher organizations shall have the right to bring their complaints to the school principal; that action must be taken at this level, with right of appeal to the superintendent and to the school board. But this has not been done, and, as a consequence, it may well be, as argued by plaintiffs here, that they are the innocent victims of having acted upon the complaints of others and been hurt by it.

AND NOW, October 8, 1965, it is ordered and decreed that defendants' preliminary objections are sustained, and the complaint in equity herein filed is dismissed. An exception is noted for plaintiffs.